# Case No. 17,925.
## WOLF v. The MAITLAND.
[See Case No. 8,979.]

---

# Case No. 17,925a.
## WOLF v. MUTUAL BENEFIT LIFE INS. CO.
[2 Cin. Law Bul. 304.]

Circuit Court, S. D. Ohio. 1877.

LIFE INSURANCE—SUICIDE—INSANITY—TEMPERATE HABITS.

[1. Under a policy conditioned to be void in case the insured should "die by his own hand," there is no liability if the insured kills himself while in the possession of his ordinary reasoning faculties, and from anger, pride, jealousy, or a desire to escape from the ills of life. If, however, his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences, and effect of his act, or if he was impelled thereto by an insane impulse, which he had not the power to resist, the insurer is liable.]

[2. A representation in the application that the applicant is "sober and temperate" does not mean that he totally abstains from the use of intoxicating liquors, or that he may not have been drunk on some occasions. It means, rather, that he is temperate in the use of spirituous liquors,—not addicted to their excessive use.]

P. Houk and G. R. Sage. for plaintiff.
Young & Gotschall, for defendant.

SWING, District Judge (charging jury). The petition in this case alleges, in substance, that on the 5th day of March, 1866, the defendant entered into a contract of insurance with the plaintiff (who was then the wife of John T. Wolf), whereby, in consideration of an annual premium of $195.30, to be paid on the 5th of March in each year, it insured the life of the said John T. Wolf for the period of life, or for twenty years if that event should not sooner occur, in the sum of $5,000, said sum to be paid by the defendant to the plaintiff after notice and proof of the death of the said John T. Wolf. That she paid the premiums according to the terms of the policy. That her said husand died March 31, 1869. That she had made proof of death within ten days thereafter, and gave notice and proof thereof to the defendant, demanding an adjustment and payment, but defendant refused and still refuses to pay the same. That she has complied with all the conditions of the policy on her part, and asks judgment for $5,000. with interest from the 31st day of March, 1869.

The answer sets up eight separate defenses, all of which, except the first and fifth, have been abandoned by the defendant. The first defense is, that the contract contained a condition that in case the said John T. Wolf should die by his own hand, said policy should be void, null and of no effect, and that said John T. Wolf committed suicide by drowning himself. The fifth defense is, that the contract was made and entered into and said policy was issued in consideration of the representations made to said company, in the application of said plaintiff for said policy, and it was then and there agreed that the answers of the said John T. Wolf in said application should form the basis of said contract between himself and said company, and that the said John T. Wolf, in said application, answered and represented, that he was sober and temperate, and had always been so, whereas in fact, the said John T. Wolf was not at the time sober and temperate, but was then, and for a long time prior thereto had been, intemperate, and in the habit of drinking intoxicating liquors intemperately and to excess.

The plaintiff replies to the first defense: 1. She denies that John T. Wolf committed suicide by drowning or by any other means. 2. That if the said John T. Wolf committed suicide, he was of unsound mind before and at the time of his death, and that at said time his faculties were impaired to such an extent, that he was unable to understand the moral or physical character, nature or con-

sequence of his acts, and if he committed suicide he was impelled thereto by an insane impulse which he had not the power to resist. To the fifth defense the plaintiff replies that she denies that the said John T. Wolf was at the time said policy was issued, or that he had been prior thereto intemperate or in the habit of drinking intoxicating liquors intemperately or to excess, and that his habits were then well known to said company. In order to entitle the plaintiff to a recovery in this case, she must have established by the evidence that the contract of insurance was entered into as alleged. That the premiums were paid as provided for in said contract of insurance, and that John T. Wolf was dead, and that due notice and proof thereof had been made to the defendant. If the evidence therefore establishes the existence of these several facts, your verdict will be for the plaintiff, unless the evidence has established one of the defenses relied upon.

The first defense is, that the contract contained the condition "that in case the said John T. Wolf should die by his own hand, the policy should be null and void," and that the said John T. Wolf committed suicide by drowning himself. It is admitted that John T. Wolf did take his own life by drowning himself; but the plaintiff says that at the time he did so, and before, he was of unsound mind, and his faculties were impaired to such an extent that he was unable to understand the moral or physical character, nature or consequence of the act, and that he was impelled thereto by an insane impulse which he had not the power to resist.

In the examination of the evidence bearing upon this defense, it is important for you to know the true legal meaning of the words "shall die by his own hand," and what effect shall be given to the facts set up in the reply to this defense. Literally, these words embrace death by the act of the party through accident or mistake, and yet it could hardly be said that this was the sense in which the parties to the contract understood they were using them. They would also embrace the act of self-destruction when the party was wholly without mind, and yet the authorities are uniform that that would not come within their proper meaning. But the extent of the mental capacity which should be possessed by the party taking his own life in order to bring the case within the meaning of these words, is a question upon which there was, and still exists among jurists the widest difference of opinion, the treatises and books of reports are filled with learning upon the various theories entertained; but with the view I take of the law, it would serve no valuable purpose to review the arguments in their support. It may, however, be remarked, that it is not strange that this difference should exist; for whilst science has to some extent discovered the members and organs of the body, the parts and elements which constitute each, their different offices and functions, their relation to and effect upon each other, and their powers as a unit; yet it has failed to invent a microscope with lens powerful enough to enable us to see the mind, and no human being has ever lived with capacity sufficient to analyze it; no wonder then that philosophy and science have failed to ascertain fully the relation which the mind and body sustain to each other, or how the mind acts upon or through the body; how the material is affected by the immaterial. But in the administration of justice, the quality which shall be assigned to an act, depends so much upon the intelligence with which it is directed, that jurists have adopted certain rules by which this quality is determined by the degree of intelligence apparently professed by the author of the act, at the time of its commission. As already observed, these rules are not uniform, but we are relieved from choosing between them, for it is our duty, as well as our pleasure, to follow the rules as announced by the supreme court of the United States.

In Life Ins. Co. v. Terry, 15 Wall. [82 U. S.] 580, Mr. Justice Hunt, after a very elaborate review of the conflicting authorities upon the question, announced the opinion of the court as follows: "We hold the rule on the question before us to be this: If the assured, being in the possession of his ordinary reasoning faculties, from anger, pride, jealousy, or a desire to escape from the ills of life, intentionally takes his own life, the proviso attaches, and there can be no recovery. If the death is caused by the voluntary act of the accused, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences and effects of the act he is about to commit, or when he is impelled thereto by an insane impulse which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable." And in Bigelow v. Berkshire Life Ins. Co., 93 U. S. 284, Mr. Justice Davis, in delivering the opinion of the court, says: "There has been a great diversity of judicial opinion as to whether self-destruction by a man in a fit of insanity, is within the condition of a life policy where the words of exemption are that the insured 'shall commit suicide,' or 'shall die by his own hand.' But since the decision in Life Ins. Co. v. Terry, 15 Wall. [82 U. S.] 580, the question is no longer an open one in this court. In that case we held that they referred to an act of criminal self-destruction, and did not apply to an insane person who took his life."

If the jury find from the evidence that John T. Wolf came to his death by throwing himself into the river, and that at the time

he did so, he was in the possession of his ordinary reasoning faculties, and from anger, pride, jealousy, or a desire to escape from the ills of life, intending when he threw himself into the river to drown himself, the plaintiff cannot recover. But if John T. Wolf voluntarily threw himself into the river, knowing and intending that it should produce death, but when his reasoning faculties were so far impaired that he was not able to understand the moral character, the general nature, consequences and effect of throwing himself into the water, or, if he was impelled thereto by an insane impulse which he had not the power to resist, the plaintiff will be entitled to your verdict.

The second defense is: That John T. Wolf represented that he was sober and temperate, and had always been so, when, in fact, he was not sober and temperate, but was and had been intemperate, and had been in the habit of drinking intoxicating liquors intemperately and to excess. By the terms of this policy, this representation became a part of the contract between the parties, and if the testimony satisfies you that, at the time this contract was entered into, John T. Wolf was not sober and temperate, or had not been so, there can be no recovery in this case. Webster defines the word "sober" as "temperate in the use of spirituous liquors." "Not overpowered by spirituous liquors." The same author defines "temperate" as "moderate; not excessive." It will, therefore, be seen that these words do not imply that, in order for a man to be sober and temperate, that he should totally abstain from the use of intoxicating liquors. And the fact that a man may have been drunk on some occasions, does not, of itself, make him an intemperate man. Keeping in view these definitions, you will examine the evidence, and ascertain if it sustains the second defense; if so, the plaintiff cannot recover; if it does not, the plaintiff is entitled to your verdict.

The jury are the sole judges of the weight of the evidence; if there should be a conflict in the evidence, it is the duty of the jury to reconcile, if possible, such conflict. If, however, they cannot do so, they will accept that which they think, under the circumstances, ought to be believed, and reject that which they think is not entitled to credit.

Verdict for the plaintiff.